**TROUTMAN PEPPER LOCKE LLP**
Tambry L. Bradford (SBN 223282)
tambry.bradford@troutman.com
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9800
Facsimile: 213.928.9850

**TROUTMAN PEPPER LOCKE LLP**
Angelo A. Stio III, Esq. (NJ # 014791997)
(*pro hac vice application forthcoming*)
angelo.Stio@troutman.com
301 Carnegie Center
Princeton, NJ  08540-6227
Telephone: 609.452.0808
Facsimile: 609.452.1147

*Attorneys for Defendant,*
*Ideal Image Development Corporation*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.M. individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IDEAL IMAGE DEVELOPMENT CORPORATION,<br><br>Defendant. | Case No.  3:24-cv-02297-AJB-VET<br><br>Hon. Anthony J. Battaglia<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Anthony Lazare; and Request for Judicial Notice]<br><br>Date: April 24, 2025<br>Time: 3:00 p.m.<br>Crtrm: 4A<br><br>Complaint Filed:    December 10, 2024<br>Trial Date:          None Set |

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TO THE COURT, PLAINTIFF, AND PLAINTIFF'S COUNSEL:**

**PLEASE TAKE NOTICE THAT** on April 24, 2025 at 3:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 14B, 14th Floor, of the James M. Carter and Judith N. Keep United States Courthouse located at 333 West Broadway, San Diego, California 92101, Defendant Ideal Image Development Corporation ("Ideal Image") will, and hereby does, move this Court for entry of an order (a) pursuant to 9 U.S.C. § 3 that stays the above-captioned matter and refers it to arbitration under the terms of the arbitration agreement, or in the alternative, (b) pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all causes of action against Ideal Image for failure to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Anthony Lazare and exhibits attached thereto, the Request for Judicial Notice and exhibits attached thereto, and on such other and further matters as may be presented to the Court on or before the date of this hearing.

Dated:  February 10, 2025

**TROUTMAN PEPPER LOCKE LLP**

By: _/s/ Tambry L. Bradford_
Tambry L. Bradford
Angelo A. Stio III *(pro hac vice application forthcoming)*

*Attorneys for Defendant*
*Ideal Image Development*
*Corporation*

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL ALLEGATIONS ................................................................................3

    A.    The Parties ................................................................................................3

    B.    The Arbitration Agreement .......................................................................3

    C.    Plaintiff's Claims .....................................................................................5

III.  LEGAL ARGUMENT ..........................................................................................7

    A.    Pursuant to Section 3 of the FAA The Court Must Stay the Case and Allow it to Proceed to Arbitration. ...........................................................7

        1.    The Motion to Compel Arbitration Standard. .............................7

        2.    A valid agreement to arbitrate exists. ..........................................8

        3.    Arbitrability has been delegated to the AAA. ..............................9

        4.    The claims fall within the scope of the arbitration provision. ...........9

    B.    Regardless of the Arbitration Provision, Plaintiff's Claims Fail as a Matter of Law ........................................................................................10

        1.    Motion to Dismiss Standard. ......................................................10

        2.    Plaintiff's CIPA claim fails. .......................................................11

        3.    Plaintiff's ECPA claim fails for the same reasons as the CIPA claim. ..........................................................................................14

        4.    The Complaint fails to plausibly allege a CMIA claim. .................17

        5.    Plaintiff fails to state an invasion of privacy under the California Constitution. ............................................................21

IV.   CONCLUSION ..................................................................................................23

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Optical Networks, Inc. v. Seagate Tech. LLC*,
No. 24-cv-03745-EKL, 2025 WL 240799 (N.D. Cal. Jan. 17, 2025)................11

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024)...............................................................19

*In re Ambry Genetics*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)..............................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .............................................................................................7

*Banga v. Equifax Info. Servs. LLC*,
2015 WL 3799546 (N.D. Cal. June 18, 2015) ...................................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................10

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)..............................................................................7

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ...............................................................................20

*Chiron Corp. v. Ortho Diagnostic Sys.*,
207 F.3d 1126 (9th Cir. 2000)..........................................................................7, 9

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..................................................16, 18, 21

*Cronin v. Monex Deposit Co.*,
No. SACV 08-1297, 2009 WL 412023 (C.D. Cal. Feb. 17, 2009).....................9

*Deteresa v. Am. Broad. Companies, Inc.*,
121 F.3d 460 (9th Cir. 1997)..............................................................................14

- ii -

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-Civ. 02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ...................15

*Eisenhower Medical Center v. Superior Court*,
226 Cal. App. 4th 430 (2014)........................................................................17

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024)................................................22

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015).............................................................12

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017).............................................................14

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011).............................................................14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .........................................................................20

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .................................................................................8, 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021).............................................................16

*Guadagno v. E\*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008).........................................................3, 8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020).........................................................21

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019) ..........................................................................................7

*Heuer v. Nissan N Am., Inc.*,
No. 17-60018-Civ-Scola, 2017 WL 240799 (S.D. Fla. Aug. 11,
2017) ..............................................................................................................11

*Hoekman v. Tamko Bldg. Prods.*,
No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471 (E.D. Cal. Aug.
24, 2015) .......................................................................................................10

- iii -

*Hsu v. Puma Biotechnology, Inc.*,
    213 F. Supp. 3d 1275 (C.D. Cal. 2016)................................................................3

*Javier v. Assurance IQ, LLC*,
    16 649 F. Supp. 3d 891 (N.D. Cal. 2023)...........................................................11

*Johnson v. Charter Commc'ns, Inc.*,
    No. 21-cv-06135, 2022 WL 2673091 (N.D. Cal. June 2, 2022)..........................9

*Kurowski v. Rush Sys. for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023)..........................................................12, 15

*Licea v. Cinmar, LLC*,
    659 F. Supp. 3d 1096 (C.D. Cal. 2023)..............................................................12

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal 2021)................................................................13

*Mikulsky v. Bloomingdale's, LLC*,
    2024 WL 337180 (S.D. Cal. Jan. 25, 2024).......................................................20

*Nienaber v. Overlake Hosp. Med. Ctr.*,
    733 F. Supp. 3d 1082 (W.D. Wash. May 13, 2024)...............................13, 15, 20

*Oberstein v. Live Nation Entm't, Inc.*,
    60 F.4th 505 (9th Cir. 2023)................................................................................8

*Okash v. Essentia Health*,
    No. 23 Civ. 482 (JRT) (LIB), 2024 WL 1285779 (D. Minn. Mar. 26,
    2024)..............................................................................................................15, 21

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022)............................................................................15

*Rodriguez v. FastMed Urgent Care, P.C.*,
    741 F. Supp. 3d 352 (E.D.N.C. 2024)...............................................................16

*Rodriguez v. Google LLC*,
    No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022).................20

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021)...............................................................16

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Seismic Reservoir 2020, Inc. v. Paulsson*,
 785 F.3d 330 (9th Cir. 2015) ................................................................................. 10

*Smith v. Facebook*,
 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th
 Cir. 2018) ............................................................................................................... 18

*Smith v. Facebook, Inc.*,
 745 F. App'x 8 (9th Cir. 2018) ....................................................................... 13, 18

*Smith v. Spizzirri*,
 601 U.S. 472 (2024) ................................................................................. 7, 18, 19

*Stasi v. Immediate Health Grp. Corp.*
 501 F. Supp. 3d. 898 (S.D. Cal. 2020) ................................................................. 19

*Sussman v. ABC*,
 186 F.3d 1200 (9th Cir. 1999) .............................................................................. 15

*Tavernetti v. Superior Court*,
 22 Cal. 3d 187 (Cal. 1978) ................................................................................... 11

*Terminix Int'l Co. v. Palmer Ranch Ltd.*,
 432 F.3d 1327 (11th Cir. 2005) ............................................................................. 9

*Valiente v. StockX, Inc.*,
 645 F. Supp. 3d 1331 (S.D. Fla. 2022) ................................................................... 8

*Wilson v. Rater8, LLC*,
 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ....................................................... 18

*Yahoo!, Inc. v. Iverson*,
 836 F. Supp. 2d 1007 (N.D. Cal. Oct. 11, 2011) .................................................... 9

*In re Zynga Privacy Litig.*,
 750 F.3d 1098 (9th Cir. 2014) ........................................................................ 12, 16

**Statutes**

9 U.S.C. § 1 .................................................................................................................... 4

9 U.S.C. § 2 .................................................................................................................... 7

9 U.S.C. § 3 ........................................................................................................ 7, 9, 22

- v -

18 U.S.C. § 2511(2)(d) ...................................................................................... 14

42 U.S.C. § 1320d-6(a)(3) ................................................................................ 14

Cal. Civ. Code § 56.05(i) ................................................................................... 17

Cal. Civ. Code § 56.10(a) .................................................................................. 17

Cal. Penal Code § 631(a) ........................................................................ 11, 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 10

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff GM ("Plaintiff"), an active Facebook user, allegedly visited defendant Ideal Image Development Corporation's ("Ideal Image") public facing website located at www.idealimage.com ("Public Website") to obtain information on CoolSculpting. Plaintiff alleges she used the website to book a consultation and the website, through use of a Facebook Pixel, disclosed to Facebook that she was interested in CoolSculpting. Plaintiff does not identify any specific information she disclosed to Ideal Image, only that it was personally identifiable information ("PII") and protected health information ("PHI"). From these conclusory allegations, Plaintiff contends Ideal Image violated federal and state wiretapping laws, the California Confidentiality of Medical Information Act ("CMIA"), and invaded her privacy rights under the California Constitution.

As set forth below, Plaintiff's claims have no merit. As a preliminary matter, under Section 3 of the Federal Arbitration Act ("FAA") the action must be stayed and arbitrated under the arbitration provision contained in a Customer Agreement that Plaintiff agreed to when she registered for an Ideal Image account. That arbitration provision (i) applies to any controversy or claim arising out of or relating to Ideal Image's products or services; (ii) requires arbitration on an individual basis; and (iii) delegates jurisdiction for determining arbitrability to an arbitrator and not the court. Since there is no dispute that Plaintiff entered into the Customer Agreement and the provision covers the claims asserted here, the matter must be stayed in favor of arbitration.

In the alternative, the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) because each of Plaintiff's four claims is fatally flawed. First, the Electronic Communications Privacy Act ("ECPA") claim (Count I) and California Invasion of Privacy ("CIPA") claim (Count II) fail because Plaintiff alleges nothing more than the

- 1 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

sharing of a URL from a public website, which does not constitute the "content" of a communication to support a claim under either statute.

Separately, the ECPA claim also fails because the ECPA is a one-party consent statute (meaning if one party to the communication consents to sharing, no claim exists). Since Ideal Image was a party to the alleged communication, the ECPA claim fails. Moreover, as a matter of law, the crime-tort exception to one-party consent does not apply because the alleged sharing of information with Facebook is not an independent crime or tort, a requirement for the exception to apply. Further, the CIPA claim fails because it is barred by the one-year statute of limitations. This matter was filed on December 10, 2024, and the alleged conduct related to Plaintiff's claims occurred in October 2023. The CIPA claim is facially time-barred and there are no well-pleaded allegations to support application of any discovery rule.

Plaintiff's claim under the CMIA also fails. The CMIA claim is based on conclusory allegations that Ideal Image disclosed Plaintiff's "medical information" to Facebook, but the Complaint is completely devoid of any well-pleaded allegations concerning the specific PHI or "medical information" Plaintiff provided that was allegedly disclosed, much less any allegations establishing that someone accessed or viewed any PHI or "medical information" that was allegedly shared. Further, and most problematic, Plaintiff cannot argue the URL from a public webpage visited by a hypothetical individual containing the word "CoolSculpting" constitutes medical information. The word "CoolSculpting" alone does not convey the existence of a medical condition or even the receipt of medical treatment. Moreover, a URL for a webpage a Facebook member visits is not the type of information that is highly offensive to give rise to an invasion of privacy claim. It is general information from a Public Website that anyone can obtain, and as such not sensitive information entitled to protection under the law.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## II. FACTUAL ALLEGATIONS

### A. The Parties

Ideal Image is a Florida Corporation that provides personal aesthetic and wellness treatments to clients through clinics located in multiple states throughout the country. Complaint ("Cmpl."), ¶ 8. Although Ideal Image once had a clinic in California, it does not have a clinic today. *See* Ideal Image's concurrently filed Request for Judicial Notice ("RJN"), Ex. 1 (https://www.idealimage.com/locations/, last visited on February 10, 2025).

Plaintiff is an individual who registered for an Ideal Image account on April 28, 2023. Declaration of Anthony Lazare ("Lazare Decl."), ¶ 11, Ex. A.[1] At the time she registered for an account with Ideal Image, Plaintiff was presented with a secure hyperlink containing, among other things, a copy of a Customer Agreement. *Id.* ¶¶ 11-14, Ex. A. Plaintiff was required to scroll through the agreement and accept its terms as a condition of creating an Ideal Image account. *Id.* ¶¶ 10-13. Plaintiff affirmatively accepted the Customer Agreement by clicking an icon accepting the terms of the Customer Agreement on April 28, 2023, at 10:33 p.m. PT. *Id.* ¶ 14, Ex. A.

### B. The Arbitration Agreement

The Customer Agreement that Plaintiff entered into "sets forth important legally binding terms and conditions governing [Plaintiff's] relationship in transactions with Ideal Image, and relating to the services to be provided by Ideal Image." *Id.*, Ex. B at 1. Among other things, it contains a clear and conspicuous arbitration provision.

Directly under the introductory paragraph, the Customer Agreement states:

> **Binding Arbitration**. This Agreement provides that all disputes between you and Ideal Image that in anyway relate to this Agreement or the services

---

[1] It is appropriate for court to consider extraneous facts on a motion to compel arbitration or to dismiss. *See, e.g.*, *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263, 1266–69 (C.D. Cal. 2008) (evaluating materials outside the complaint on motion to compel arbitration); *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. 2016) (recognizing certain evidence outside complaint may be considered on motion to dismiss).

- 3 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

provided by Ideal Image will be resolved by BINDING ARBITRATION. ACCORDINGLY, YOU AGREE TO GIVE UP YOUR RIGHT TO GO TO COURT (INCLUDING IN A CLASS ACTION PROCEEDING) to assert or defend your rights under these Terms of Use (except for matters that may be taken to small claims court). Your rights will be determined by a NEUTRAL ARBITRATOR and NOT a judge or jury and your claims cannot be brought as a class action. Please review Section Five (5) (Mandatory Dispute Resolution and Arbitration) below for the details regarding your agreement to arbitrate any disputes with Ideal Image.

*Id.* (emphasis in original).

Section 5 then states, in relevant part:

5. **MANDATORY DISPUTE RESOLUTION AND ARBITRATION.** READ THIS PROVISION CAREFULLY BECAUSE IT WILL SIGNIFICANTLY AFFECT ALL CLAIMS BETWEEN US. Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, including for the products and services performed by Ideal Image ("Claim"), shall be resolved by binding arbitration and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. … You (as well as your agents, heirs, and assigns) agree to waive the right to a trial by jury. The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* shall apply to the construction, interpretation, and enforcement of this provision, as well as to the confirmation of or appeal from any arbitration award. The laws of the state of Florida shall apply to all Claims relating to the Agreement and any Claims brought by the parties. Any in-person arbitration shall take place in Hillsborough County, Florida. The parties shall agree to a single arbitrator chosen from the American Arbitration Association ("AAA") roster of arbitrators using the Arbitrator Select List Only Process. If the parties are unable to agree on an arbitrator, then the parties shall utilize the AAA Select List and Appointment Service. If those services are no longer available, then the parties shall use any other method offered by the AAA to appoint one. The arbitrator must have healthcare experience. The AAA Consumer Arbitration Rules shall apply except to the extent they are inconsistent with any terms of the Agreement in which case the terms of the Agreement controls. … Any resolution of any Claim shall take place on an individual basis without resort to any form of collective, class or representative action (the "Class Action Waiver"). THE CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM. … The Parties to the Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the Parties and is nonseverable from the agreement to arbitrate Claims. … THE PARTIES ACKNOWLEDGE AND AGREE THAT UNDER NO CIRCUMSTANCES WILL A CLASS ACTION BE ARBITRATED OR PURSUED IN ANY COURT ACTION.

*Id.* at 2 (emphasis in original); *see also* Lazare Decl., ¶¶ 12-13 (figures illustrating clickwrap agreement process).

- 4 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

### C.    Plaintiff's Claims

Despite the arbitration provision, Plaintiff filed the instant Complaint on December 10, 2024, alleging Ideal Image assisted Facebook with intercepting her PII and PHI without her consent.  Cmpl. ¶ 6.  Plaintiff claims she is a Facebook user, and in October 2023, she visited Ideal Image's Public Website "to book a consultation for a CoolSculpting fat loss procedure at one of Defendant's facilities located in San Diego, California."  *Id.* ¶¶ 6-7.  Plaintiff contends that, unbeknownst to her, Ideal Image "assisted Facebook with incepting [her] communications, including those that contained [PII], [PHI], and related confidential information." *Id.* ¶ 6.  Plaintiff alleges she "received advertisements marketing body contouring and other weight loss procedures, specifically targeted at Plaintiff as a result of Defendant's disclosure of her medical booking information to Facebook."  *Id.*

These are the entirety of the allegations in the Complaint with regard to the information Plaintiff shared and the information allegedly disclosed. There are no allegations concerning the specific PII or PHI Plaintiff allegedly disclosed to Ideal Image, or what PII or PHI Facebook purportedly intercepted.  Plaintiff says nothing about a medical condition she suffers from and does not even allege that she actually received medical treatment from Ideal Image.  Instead, Plaintiff offers speculation about a hypothetical individual (not the Plaintiff) who visited the Public Website, and specifically a webpage entitled "Which Services Are You Most Interested In?" *Id.* ¶ 25 (Figure 1). That webpage contains a list of services and states:

> Pick your favorite service from the list below.  Have your eye on more than one?  Just let your Aesthetic Consultant know about the other ***when you speak to them***.

*Id.* (emphasis added). The Complaint goes on to allege that when the icon for CoolSculpting on the webpage is selected, the hypothetical individual's browser "sent a GET request to [Ideal Image]'s server requesting that server to load the particular webpage." Cmpl. ¶ 25.  The Complaint alleges further that through use of the Facebook Pixel, Facebook causes the individual's web browser – not Ideal Image – "to secretly

- 5 -

duplicate the communication with [Ideal Image], transmitting it to Facebook's servers." *Id.* In short, Facebook does not "intercept" anything; an individual's own web browser (*i.e.*, a computer or smartphone) transmits the information to Facebook. *See id.*

In addition, the webpage depicted in Figure 1 of paragraph 25 of the Complaint, *does not* "book[] a consultation for" a medical procedure as Plaintiff alleges. The express language on the webpage itself states that an "Aesthetic Consultant" will call the individual about the service and any other services the individual may be interested in learning about. *Id.* ¶ 25 (Figure 1).

The Complaint also alleges that Figure 2 in paragraph 25 of the Complaint shows the information the hypothetical individual's web browser transmits to Facebook. *Id.* ¶ 25 (Figure 2). Aside from showing the URL for the webpage the hypothetical individual visited on the Public Website, Figure 2 does not disclose the hypothetical individual's identity or PII or PHI. *See id.* Indeed, Figure 2 does not contain the software code or cookie that the Complaint alleges contains the Facebook ID (i.e., __fbp, fr cookie, or c_user). *Id.* ¶¶ 28-29, 30-38.

The Complaint goes on to assert four causes of action against Ideal Image, which all arise from the alleged sharing of information with Facebook. In Count I, the Complaint alleges Ideal Image violated the ECPA by "intercept[ing] Plaintiff's and Class Members' electronic communications through the Facebook Tracking Pixel, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' private and confidential information to third parties, such as Facebook." Cmpl. ¶ 84. Recognizing the ECPA contains a "party exception" to liability, Plaintiff alleges the exception does not apply because the "communication is intercepted for the purpose of committing tortious or criminal act." *Id.* ¶ 89. In Count II, the Complaint alleges Ideal Image violated CIPA by "aid[ing], agree[ing] with, and conspir[ing] with Facebook to track and intercept Plaintiff's and Class Members' internet communications while accessing https://www.idealimage.com" without consent. *Id.* ¶ 100. In Count III, the Complaint

- 6 -

alleges Ideal Image violated the CMIA by allegedly disclosing a Facebook ID and "several pieces of information regarding its patients' use of Defendant's Website." *Id.* ¶ 112. Finally, in Count IV, the Complaint alleges Ideal Image is liable for invasion of privacy under California's Constitution as a result of "using the Facebook Tracking Pixel to record and communicate patients' Facebook ID's alongside their sensitive and confidential online medical communications." *Id.* ¶ 121.

Nowhere in the Complaint does Plaintiff allege she suffered harm or damages. Instead, she recites the statutory remedies available for the statutes cited in the Complaint. *Id.* ¶¶ 94, 105, 117-18.

## III.    LEGAL ARGUMENT

### A.    Pursuant to Section 3 of the FAA The Court Must Stay the Case and Allow it to Proceed to Arbitration.

#### 1.    *The Motion to Compel Arbitration Standard.*

Plaintiff's Complaint fails for a myriad of reasons, beginning with the undisputed fact that she agreed to arbitrate her claims on an individual basis under Section 5 of the Customer Agreement. *See* Lazare Decl.*,* Ex. B § 5.  Under the FAA, an agreement to arbitrate, like Section 5 here, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This reflects Congress' intent to enforce agreements to arbitrate and affirms the principle that federal law strongly favors arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  When applied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration on issues as to which" an agreement to arbitrate exists. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis in original). Furthermore, the FAA mandates staying judicial proceedings pending arbitration. 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 472 (2024) (noting that the FAA's use of the

- 7 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

word "shall" creates an obligation to stay proceedings that is "impervious to judicial discretion").

To this end, a "court's role under the [FAA] is … limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*   However, when the parties have delegated the authority to determine arbitrability to an arbitrator, as is the case here, the district court's authority is even more constrained, and a court simply looks at whether a valid arbitration agreement exists. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In other words, when a delegation of authority exists, the "court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019).

### 2.    *A valid agreement to arbitrate exists.*

To form a contract, there must be mutual manifestation of assent, whether by written or spoken word or by conduct. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  In ruling on a motion to compel arbitration, courts may look beyond the four corners of the complaint. *See Guadagno*, 592 F. Supp. 2d at 1266–69 (examining declarations and exhibits in ruling on a motion to compel arbitration under the FAA).  In this case, there can be no dispute that Plaintiff provided her manifestation of assent to the terms of the Customer Agreement.  At the time she created an account, Plaintiff was presented with a secure hyperlink to a Customer Agreement, which she was required to read and accept as a condition of registering for an Ideal Image account.  Lazare Decl., ¶¶ 9-14.  Plaintiff affirmatively accepted the Customer Agreement by clicking the icon acknowledging acceptance of the terms on April 28, 2023, at 10:33 p.m. PT.  *Id.* ¶¶ 13-14. This acceptance of the terms of the Customer Agreement, which was presented to an individual through a secure hyperlink and required an individual to affirmatively assent, is considered a "clickwrap agreement," which is fully enforceable. *See, e.g.*, *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) (recognizing courts routinely find clickwrap agreements enforceable and affirming order compelling arbitration);

- 8 -

*Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338-39, 1342 (S.D. Fla. 2022) (enforcing arbitration provision in clickwrap agreement under Florida law).

### 3.      *Arbitrability has been delegated to the AAA.*

There also is no dispute that Plaintiff agreed an arbitrator would decide arbitrability. Section 5 of the Customer Agreement requires the arbitration to be conducted under the American Arbitration Association ("AAA") Consumer Arbitration Rules.  *See* RJN, Ex. 2.  Rule 14 of the AAA Consumer Arbitration Rules states the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" and the "arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." *Id.* at R. 14(a) and (b).

Where, as is the case here, an arbitration provision incorporates the rules of an arbitration administrator like the AAA, those rules are considered part of the arbitration agreement and are enforceable.  *See Terminix Int'l Co. v. Palmer Ranch Ltd.,* 432 F.3d 1327, 1332 (11th Cir. 2005) (ruling that selection of AAA rules was clear and unmistakable evidence that parties agreed to submit arbitrability issue to arbitrator); *Yahoo!, Inc. v. Iverson,* 836 F. Supp. 2d 1007, 1012 (N.D. Cal. Oct. 11, 2011) (ruling that the arbitration agreement's incorporation of AAA rules signified the parties' intent to submit the question of arbitrability to the arbitrator).  In this case, the parties agreed any issue concerning the validity of the arbitration provision or arbitrability must be determined by an arbitrator (Lazare Decl., Ex. B § 5), which provides a further reason for this Court to stay this matter pending arbitration under 9 U.S.C. § 3.

### 4.      *The claims fall within the scope of the arbitration provision.*

Importantly, the claims in the Complaint fall squarely within the scope of the arbitration provision. Lazare Decl., Ex. B § 5.  Indeed, the arbitration provision provides that "*[a]ny controversy or claims arising out of or relating to the Agreement*, or breach thereof, including for the products or services performed by Ideal Image ("Claim") shall

- 9 -

be resolved by binding arbitration." *Id.* (emphasis added). This unambiguous language does not exclude any claims; instead, it covers "any and all claims" that in any way relate to the services Ideal Image provides. *See, e.g.*, *Chiron*, 207 F.3d at 1131 (finding parties' arbitration clause containing language requiring arbitration of "[a]ny dispute, controversy or claim arising out of or relating to" their agreement to be "broad and far reaching" and affirming order compelling arbitration); *Cronin v. Monex Deposit Co.*, No. SACV 08-1297, 2009 WL 412023, at *5 (C.D. Cal. Feb. 17, 2009) (describing an arbitration agreement with similar language as "extremely broad" and compelling arbitration); *Johnson v. Charter Commc'ns, Inc.*, No. 21-cv-06135, 2022 WL 2673091, at *4 (N.D. Cal. June 2, 2022) (granting motion to compel arbitration of CIPA claim for agreement with similar language). Because the Complaint is premised on the disclosure of information related to the services Ideal Image provides, the claims clearly are within the scope of the arbitration provision and go to an arbitrator.[2]

In light of the foregoing, the Court should stay the matter under Section 3 of the FAA and allow the AAA to resolve the claims on an individual basis.

**B.    Regardless of the Arbitration Provision, Plaintiff's Claims Fail as a Matter of Law**

*1.    Motion to Dismiss Standard*

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—

---

[2] It is equally clear that compelling arbitration of Plaintiff's claims on an individual, not class, basis is legally proper. *See Hoekman v. Tamko Bldg. Prods.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *7 (E.D. Cal. Aug. 24, 2015) (enforcing arbitration clause and compelling plaintiffs to "pursue their claims on an individual basis through arbitration" because "[c]lass action waivers contained within arbitration agreements are valid and enforceable.").

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

from its factual allegations. *Id.* at 679–80. The remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson,* 785 F.3d 330, 335 (9th Cir. 2015). When this standard is applied here and legal conclusions are disregarded, it is clear Plaintiff's Complaint must be dismissed as a matter of law.

### 2.    *Plaintiff's CIPA claim fails.*

Plaintiff's CIPA claim fails for two independent reasons.  First, Plaintiff's CIPA claim is time-barred. "CIPA has a one-year statute of limitations." *Javier v. Assurance IQ, LLC*, 16 649 F. Supp. 3d 891, 901–04 (N.D. Cal. 2023).  When this limitations period is applied, the CIPA cause of action must have accrued between December 11, 2023 to December 10, 2024 (the date the Complaint was filed).  The Complaint demonstrates the CIPA claim is facially time-barred because it arises out of Plaintiff's alleged use of the Public Website "[i]n or around October 2023." *See* Cmpl. ¶ 6.

In an attempt to address the time bar, the Complaint alleges Plaintiff "was not aware that Defendant assisted Facebook in unlawfully intercepting her PII and PHI [until] approximately June 2024." *Id.* ¶ 7.  But this single allegation does not save the Complaint from dismissal because a party seeking to invoke the discovery rule must "'specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Access Optical Networks, Inc. v. Seagate Tech. LLC*, No. 24-cv-03745-EKL, 2025 WL 240799, at *4 (N.D. Cal. Jan. 17, 2025) (citation omitted); *see also Heuer v. Nissan N Am., Inc.*, No. 17-60018-Civ-Scola, 2017 WL 240799, at *4 (S.D. Fla. Aug. 11, 2017) (where dates included in complaint made time-bar apparent, plaintiff was required to allege facts supporting tolling of statute of

- 11 -

limitations). Because the Complaint is silent with respect to the time, manner of discovery or inability to discover the claim earlier, the CIPA claim should be dismissed.

Second, the Complaint does not allege the essential elements needed to state a CIPA claim. Section 631(a) of CIPA prohibits "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping" through use of a machine, instrument or contrivance, (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," without consent, and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (Cal. 1978). A fourth type of liability arises under Section 631(a) for anyone who aids or conspires with a person to violated one of the other three bases under Section 631(a). Cal. Penal Code §631(a).

In the Complaint, Plaintiff alleges Ideal Image violated CIPA by aiding, agreeing with, and conspiring with Facebook to track and intercept her internet communications while accessing the Public Website. Cmpl. ¶ 100. This purported conduct, however, is not prohibited by CIPA.

To begin, courts have found that intentional wiretapping through use of a machine, instrument, or contrivance does not apply to internet communications. *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) (courts "have consistently interpreted this clause as applying only to communications over telephones and not through the internet."). Because the allegations here involve internet communications, Plaintiff cannot state a claim under CIPA's first clause.

Moreover, Plaintiff does not plausibly allege Facebook "learn[ed] the ***contents*** or meaning of a communication" to maintain a claim under CIPA's second clause. The holding from *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014), makes clear the allegations here do not establish the disclosure of contents of a communication. In *Zynga*, the Ninth Circuit recognized that a Facebook ID and the URL of a public facing webpage do not convey the contents or meaning of a communication, but instead constitute "record"

- 12 -

information. *Id.* at 1106–07. Other courts have reached similar conclusions. *See e.g., In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (finding a URL and Facebook ID are record information and do not qualify as contents); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) (finding plaintiff's allegation that the Meta Pixel on hospital's website transmitted patient IP addresses, cookie identifiers, account numbers, and URL's to Facebook did not constitute the collection of "identifiable health information" under HIPAA).

Here, the Complaint says nothing about Plaintiff's own communications with Ideal Image. Allegations about the hypothetical individual referenced in paragraph 25 of the Complaint suggest the URL for a public webpage was disclosed about a service called CoolSculpting. Yet this is precisely the type of information that has found to be record information, not contents.[3] Where, as is the case here, a URL for a public website discloses general information and not information about a medical condition or medical treatment that was provided, there is no basis for a claim. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes. Put simply, the connection between a person's browsing history [on a public hospital website] and his or her own state of health is too tenuous.") (internal citations omitted); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1082 (W.D. Wash. May 13, 2024) ("[T]he disclosure of browsing activity on a publicly available website that does not relate 'to the past, present, or future physical or mental health or condition of an individual' is not actionable.").

Finally, it is well settled that there is no basis for a claim under clause 3 of Section 631(a) if there is no violation of clauses 1 and 2. *See Mastel v. Miniclip SA,* 549 F. Supp.

---

[3] The webpage that an alleged hypothetical individual visited is not a patient portal and not a webpage where appointments are booked. *See* Cmpl. ¶ 25, Fig. 1 (establishing that appointments are made over the phone).

- 13 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

3d 1129, 1137 (E.D. Cal 2021) ("Because the court concludes that Mastel has failed to state a claim under either clause 1 or 2, his claim that Miniclip violated § 631(a)'s third clause fails as a matter of law."). Thus, even aside from the claim being time barred, the CIPA claim must also be dismissed for failure to allege the elements of the claim.

### 3. *Plaintiff's ECPA claim fails for the same reasons as the CIPA claim.*

Plaintiff alleges that Ideal Image also is liable for a violation of the ECPA because it allegedly intercepted electronic communications through use of the Facebook Pixel and shared that information with third parties, such as Facebook. Cmpl. ¶¶ 84-85. To state a claim for a violation of the ECPA, a plaintiff must allege a defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (citation omitted). The ECPA claim here fails because Plaintiff has not plausibly alleged either an "*unlawful interception"* or the "*contents*" of a communication to state a claim.

### (a)    There was no unlawful interception.

It is well recognized that the ECPA is a one-party consent statute, which means it is not unlawful "for a person not acting under color of law to intercept ... electronic communication if the person is [1] a party to the communication or [2] where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d); *see also Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 467 (9th Cir. 1997). Stated differently, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. 18 U.S.C. § 2511(2)(d)). *See, e.g.*, *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713–14 (N.D. Cal. 2011) (dismissing ECPA claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission). Because Plaintiff alleges Ideal Image is a party to the communication that

- 14 -

was allegedly intercepted, *see* Cmpl. ¶¶ 76-77, Ideal Image cannot be liable for an ECPA violation because it consented to any alleged interception, if such an interception even occurred. *See id.* ¶ 100 (alleging Ideal Image "aided, agreed with, and conspired with Facebook" to intercept Public Website communication).

Here, the communications at issue all occurred on the Public Website. As a result, Ideal Image consented to any interception. *See e.g.*, Cmpl. ¶¶ 76-77, 82. Plaintiff attempts to plead around the one-party consent statute, alleging Ideal Image violated HIPAA, 42 U.S.C. § 1320d-6(a)(3), by "knowingly disclosing individually identifiable health information ("IIHI") to a third party." Cmpl. ¶ 89. This conclusory allegation about IIHI is insufficient as a matter of law to invoke the crime tort exception to one-party consent.

First, Plaintiff does not identify the specific PHI she allegedly provided or the specific PHI that Ideal Image allegedly disclosed belonging to her. *See id.* ¶ 26. As a matter of law, the crime tort exception cannot be invoked without identifying the relevant information that was criminally or tortiously disclosed. *See Kurowski*, 683 F. Supp. 3d at 843 (dismissing ECPA claim and holding that section 1320(d)(6) could not serve as a basis for the crime-tort exception because plaintiff had not alleged sufficient facts "to support an inference that [defendant] disclosed its patients' individually identifiable health information").

Second, the crime-tort exception does not apply because Plaintiff claims the interception of her alleged IIHI by Facebook is the alleged violation of HIPAA. Cmpl. ¶ 24 (suggesting Facebook's alleged interception of information occurs "contemporaneously" with Plaintiff sending and receiving communications to and from Ideal Image's Public Website). Under Ninth Circuit precedent, the crime-tort exception is inapplicable where the interception and the alleged tort or criminal act are one in the same. *See Sussman v. ABC*, 186 F.3d 1200 (9th Cir. 1999) ("Where the purpose is not illegal or tortious, but the means are, the [plaintiffs] must seek redress elsewhere."); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022)

- 15 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

("[The] criminal or tortious purpose must be separate and independent from the act of the recording."); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-Civ. 02865 (EMC), 2024 WL 1589982, at \*10 (N.D. Cal. Apr. 11, 2024) (dismissing ECPA claim that alleged a violation of HIPAA because "the act of interception itself cannot be the crime or the tort"); *Nienaber*, 773 F. Supp. 3d at 1096 (in case involving alleged HIPAA violations, dismissing ECPA claim for the same reason as *Doe*); *Okash v. Essentia Health*, No. 23 Civ. 482 (JRT) (LIB), 2024 WL 1285779, at \*4 (D. Minn. Mar. 26, 2024) ("[B]ecause neither the alleged HIPPA nor privacy violations were independent of the interception, the crime-tort exception does not apply.").

Third, the crime-tort exception does not apply because there is no allegation that Ideal Image intended to violate HIPAA through use of the Facebook Pixel. Numerous courts have dismissed ECPA claims in pixel tracking cases where, as is the case here, a violation of HIPAA was not the purpose of the alleged interception. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-Civ. 02865 (EMC), 2024 WL 1589982, at \*10 (N.D. Cal. Apr. 11, 2024) (dismissing ECPA claim because "[v]iolation of HIPAA was not the purpose of the alleged interception"); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (even where court found plausible allegations that plaintiff's information included medical information protected under HIPAA, the "mere possibility" that the interception and disclosure of data to Facebook "for the purpose of committing any criminal or tortious act" did not suffice). The result should be the same here.

(b)    There was no disclosure of contents.

Like the CIPA claim, Plaintiff's ECPA claim also fails because the Complaint does not allege facts showing that the "contents" of any communications were disclosed to Facebook. *See* Memorandum of Points and Authorities ("Opening Mem."), *supra*, at 12-14. Courts have consistently found that CIPA and ECPA have the same "contents" of communication requirement, and their analysis is the same. *See Cousin v. Sharp*

- 16 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) (relying on *Zynga* and dismissing California wiretap act claim—which as a matter of law is analyzed in the same way as an ECPA claim—on the ground that "Plaintiffs do not provide sufficient factual support to plausibly claim their content was intercepted by Meta as a result of installing Meta Pixel on Sharp's webpage."); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("The 'contents' of a communication under CIPA and the [] Wiretap Act are the same."). Accordingly, to the extent there is no disclosure of contents under CIPA, there is no disclosure of contents under the ECPA as well.

### 4. The Complaint fails to plausibly allege a CMIA claim.

Plaintiff's CMIA claim should be dismissed because the Complaint fails to allege Ideal Image disclosed Plaintiff's medical information, or that anyone at Facebook viewed any medical information that was allegedly disclosed.

(a) <u>There are no allegations about the disclosure of medical information.</u>

The CMIA prohibits a provider of health care, a health care service plan, or a contractor from disclosing a patient's medical information without consent.  Cal. Civ. Code § 56.10(a).  Under the CMIA, "medical information" is defined as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental health application information, mental or physical condition, or treatment."  Cal. Civ. Code § 56.05(i).  Medical information under the CMIA "does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care."  *Eisenhower Medical Center v. Superior Court*, 226 Cal. App. 4th 430, 435 (2014).  Moreover, the mere fact that an individual was a patient does not constitute medical information.  *Id.* at 435–36.

- 17 -

It is clear there was no disclosure of Plaintiff's medical information by Ideal Image to support a CMIA claim. As a preliminary matter, Plaintiff does not allege what PHI or medical information she even provided to Ideal Image, let alone what was allegedly disclosed to Facebook. *See* Cmpl. ¶ 6. Instead, the Complaint discusses a hypothetical individual who allegedly visits the Public Website, has a Facebook ID,[4] and the URL from a public webpage visited is disclosed. *See id.* ¶ 25. That URL, however, does not disclose a medical condition, an appointment, or any treatment that was obtained. *See id.* (Fig. 2). It simply contains the name of a service (CoolSculpting) that the hypothetical individual sought a free consultation about to obtain additional information. *See id.* ¶ 25. The allegations about a public facing website are insufficient to support a CMIA claim. *See* cases discussed in Opening Mem., *supra* at 13-14.

The Northern District of California's decision in *Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), is instructive to support this conclusion. In *Smith*, the Court examined whether the disclosure of private information about the plaintiffs' web browsing activity about medical conditions and treatments from public records rose to the level of protected health information under HIPAA.[5] *Id.* at 947. The information that was allegedly disclosed was from a publicly available website and consisted of URLs shared with Facebook "containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information." *Id.* at 954-55. The Northern District held that because the webpages contained "general health information that is accessible to the public at large" and the "pages are available to every computer, tablet, smartphone or automated crawler," the information in the URLs did not relate to the

---

[4] Figure 2 of paragraph 25 of the Complaint demonstrates there was no disclosure of a Facebook ID. Cmpl. ¶ 25.

[5] The definition of medical information protected by CMIA largely tracks HIPAA's definition of PHI. *Cousin*, 702 F. Supp. 3d at 975.

- 18 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

"health or condition of an individual." *Id.* at 955 (quoting 45 C.F.R. § 160.103). The Ninth Circuit affirmed, holding that "[i]nformation available on publicly accessible websites stands in stark contrast to . . . information that unequivocally provides a window into an individual's personal medical history." *Smith*, 745 F. App'x at 9.[6]

Like *Smith*, the information allegedly disclosed here for the hypothetical individual comes from the Public Website and does not provide insights into the hypothetical individual's medical condition or medical treatment (much less Plaintiff's). *See* Cmpl. ¶ 25. In fact, the information Plaintiff contends was disclosed here (i.e., a webpage named "CoolSculpting") is far more general than the specific disclosure of medical information about melanoma, intestine transplant, and specific cancer doctors in *Smith*, which still were insufficient to constitute protected health information under HIPAA.[7] Indeed, unlike a patient portal where appointments can be booked and details about those appointments stored along with other information about an individual's medical conditions and medical history, the only thing that allegedly was disclosed in this case with regard to a hypothetical individual – not Plaintiff – was a URL containing the icon that was clicked in order to obtain more information about CoolSculpting through a free consultation. *Id.* ¶ 25.

---

[6] *Smith* is not alone in its reasoning. *See Wilson v. Rater8, LLC*, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (dismissing CMIA claim where plaintiff alleged the defendants "disclosed [his] name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" because "[w]hile some of this information is 'individually identifiable,' none of it constitutes 'medical information' within the meaning of the statute").

[7] Plaintiff relies on the HHS' USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES bulletin to support the theory that website tracking tools disclose PHI under HIPAA. Cmpl. ¶¶ 54-58. This reliance is misplaced. On June 20, 2024, the Northern District of Texas issued a decision in *American Hospital Association v. Becerra* declaring the Bulletin unlawful for exceeding the scope of HHS' authority under HIPAA by establishing a new legal obligation for regulated entities—in this case, two hospitals. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024). The Court found the Bulletin impermissibly expanded the definition of PHI to include the mere association of an individual's IP address with a visit to a website addressing specific health conditions. *Id.* at 797.

- 19 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

It is not plausible that someone would equate a request for information about CoolSculpting with a medical condition or even a treatment that was provided. Indeed, there is no way of knowing whether the request was made on behalf of the hypothetical website visitor or another person, whether the free consultation even occurred, or what was discussed. It is no different than the plaintiff in *Smith* obtaining general information about cancer by browsing to pages on a public website.

(b) <u>The Complaint fails to allege any medical information was accessed or viewed.</u>

Assuming there was a disclosure of medical information – which there was not – Plaintiff's CMIA claim still fails because there are no allegations that Plaintiff's medical information was viewed by a third party. In order to state a cognizable CMIA claim, a plaintiff must allege "the information was improperly viewed or otherwise accessed." *In re Ambry Genetics,* 567 F. Supp. 3d 1130, 1148 (C.D. Cal. 2021) (internal quotation marks omitted); *Stasi v. Immediate Health Grp. Corp.* 501 F. Supp. 3d. 898, 922-23 (S.D. Cal. 2020). Plaintiff's only allegation about her information is that Facebook intercepted it. Cmpl. ¶¶ 6-7. There are no allegations that information was actually viewed or accessed, and Plaintiff's allegations about a hypothetical individual accessing the Public Website do nothing to show any of Plaintiff's information was accessed or viewed. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224–25 (3d Cir. 2011) (rejecting allegations that the defendant "regularly and unlawfully shared highly confidential information" related to customers as conclusory in nature); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (recognizing that "using the word 'intercept' repeatedly is simply not enough without the addition of specific facts" to state a plausible CIPA claim). Accordingly, the absence of allegations of access or viewing of medical information render the CMIA claim deficient and subject to dismissal.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

### 5.     *Plaintiff fails to state an invasion of privacy under the California Constitution.*

A privacy claim under the California Constitution requires a showing of: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) the intrusion is so serious as to constitute an egregious breach of the social norms such that the breach is highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted). Plaintiff fails to plead facts satisfying a single one of these elements.

First, Plaintiff fails to allege an intrusion. Plaintiff gave her information to Ideal Image willingly. Cmpl. ¶¶ 1, 6-7. That is not an intrusion. *See, e.g.*, *Mikulsky v. Bloomingdale's, LLC*, 2024 WL 337180, at *8 (S.D. Cal. Jan. 25, 2024) ("declin[ing] to find a privacy interest in Plaintiff's interactions with Defendants' own website when they choose to use that website"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1082, 1089 (W.D. Wash. 2024) (finding no intrusion, "[b]ecause Plaintiff voluntarily shared her information with Defendant"). Nor is Ideal Image's alleged disclosure of Plaintiff's information an intrusion. *See Banga v. Equifax Info. Servs. LLC*, 2015 WL 3799546, at *9 (N.D. Cal. June 18, 2015) ("The thrust of [plaintiff's] allegations is not that [defendant] obtained unwanted access to data ... but rather that it improperly disclosed data ... That is not an intrusion."); *Okash v. Essentia Health*, 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) (finding that an intrusion "cannot exist when the information is provided by the plaintiff, even if a defendant later shares the information") (citation omitted).

Second, Plaintiff has failed to plausibly allege any protected privacy interest that was violated. As set forth above, there was no disclosure of protected health information or even medical information belonging to her that would give rise to a privacy right to support a claim. *See* Opening Mem., *supra*, at 3, 6, 14, 17-19. In fact, there are no allegations of any specific sensitive or private information Plaintiff shared with Ideal Image to be found anywhere in the Complaint. Under Plaintiff's flawed theory of the

- 21 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

case, any company in the medical industry can apparently be sued for purportedly disclosing any type of information, including innocuous website user's browsing information, even when no actual protected health information, medical condition, or treatment information is disclosed. But, California courts have consistently rejected claims based on such speculative and non-specific allegations. *Cousin*, 681 F. Supp. 3d at 1126–27 (dismissing invasion of privacy claims based on public website browsing); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (dismissing invasion of privacy claims where the court had "doubts about the seriousness of the alleged invasion"). This Court should do the same.

Third, Plaintiff's claim fails because she has not alleged a reasonable expectation of privacy or a highly offensive intrusion. To the contrary, the allegations in the Complaint demonstrate that, at best, Plaintiff clicked on an icon for CoolSculpting to request more information about CoolSculpting. There are no allegations that a medical condition was disclosed and no allegations as to whether Plaintiff visited the website to obtain information for herself, a third party or out of general curiosity. *See* Cmpl. ¶¶ 6-7, 25. Simply browsing a Public Website to obtain general information does not carry with it a reasonable expectation of privacy or a highly offensive intrusion. *Cousin*, 681 F. Supp. 3d at 1127 ("disclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct under either common law or the California Constitution"); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *8 (S.D. Cal. Mar. 18, 2024) (dismissing intrusion claim because the capturing of plaintiff's "personal details," "browsing history," and "IP address . . . is insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a privacy).

/ / /

/ / /

/ / /

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## IV.   CONCLUSION

Based on the foregoing, Ideal Image respectfully requests that the Court enter an Order staying the matter under 9 U.S.C. § 3 in accordance with the arbitration provision, or, in the alternative, enter an Order dismissing the Complaint.

Dated:  February 10, 2025

**TROUTMAN PEPPER LOCKE LLP**

By: */s/ Tambry L. Bradford*
Tambry L. Bradford
Angelo A. Stio III *(pro hac vice application forthcoming)*

*Attorneys for Defendant*
*Ideal Image Development*
*Corporation*

- 23 -

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 10th day of February 2025, I caused the foregoing **NOTICE OF MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** to be electronically filed with the Clerk of the Court using the CM/ECF.

**TROUTMAN PEPPER LOCKE LLP**

By: */s/ Tambry L. Bradford*
Tambry L. Bradford
Angelo A. Stio III
*(pro hac vice application forthcoming)*